Good morning and may it please the court. Bill Burgess on behalf of Alan Butler. I believe I've reserved five minutes for rebuttal. In light of the court's recent decision in United States v. Blackmun and the 28J letters on that, I intend to focus this morning on the first issue in our briefs, the District Court's calculation of loss and proceeds for sentencing, restitution, and forfeiture. And as we described in the briefs, in this case Butler presented evidence that over the course of eight years he performed some... I take it from that you're conceding the Blackmun issue. I think we have to. I mean we explained in the letter the court probably didn't have to reach the issue but it's hard to say that the court did not in fact reach the issue and we think it did. I mean there's the paragraph at the end of the opinion if that was all there was we'd say it just kind of hangs out there and it's unnecessary but the government cites some of the other language in the We don't think the court had to reach the issue but we do think that the court did reach the issue in Blackmun. That's why we reserved whatever rights we still have after that. So as to the first issue in the briefs and Butler presented evidence over the course of eight years he did some 1,900 hours of manual labor after hours. This wasn't just clean up and pounding nails, this was using his own construction equipment, building walls, digging trenches to perform valiant acts subcontracts and the district court said a couple of different things about that but didn't, the court accepted that testimony for this for the sake of analysis but still gave Butler zero credit in terms of his sentence for forfeiture and restitution and and we submit that this was error. The district court gave I think two reasons for this. The first one is the I think that's and that that's that's correct we don't dispute that. I know the FBI agent did get into the the tax records and said there was some indicia that Valley was operating as a legitimate company and in fact performed other contracts that weren't part of the part of the calculation here but yes as part of I believe the record reflected that as part of concealing his ownership of Valiant Act he did not have Valiant Act pay himself a pay Mr. Butler a salary. He mingled their funds with his funds but again the district court didn't get into this and didn't rely on this and so it's not this isn't the situation of like a black box jury verdict where you look to see if there's evidence that could have supported the ultimate conclusion. That is a bad fact for us but we don't think the district court relied on it. We think that the district court did do was give two reasons for this. The first was the legal reason that we focused on in our briefs and this is the the actus rei as part of Butler's crime. The district court's reasoning is contained in a number of orders but we think the the critical part of the analysis is in two paragraphs there's the one straddling a 308 and 309 and a 309 and 310 and and there you know the district court says at a 309 310 assuming for the sake of analysis that Butler actually performed manual labor as he contends. It did not provide legitimate value to CHC and he says that Butler's labor was specifically performed with the intent to profit at his employer's expense. It was the very essence of the criminal conduct to which he pled guilty. We think that's wrong under this this net principle we've talked about. We don't think the government defends that part of the district court's reasoning. This was part of his his scheme in some sense. I mean he pled guilty to concealing the ownership of Acton Valley from from his employer and he did say that he profited from that but that doesn't mean that the work he did for Valley and Acton didn't provide legitimate value to CH construction. We think that part of the district court reasoning is in error. The second reason the district court gave and I think this is the part the government focuses on a bit more is where the district court says well this was part of Butler's contractual duties to CH construction and again the reasoning is in a bunch of different places we've tried to pull it together but we think it's most explicit at a 351 which is the order denying the stay pending appeal where the district court says you know that this court found that defendant was not entitled to an offset for his services he provided fell under his contractual duties to employ his employer and then at a 409 this is remarks on the sentencing transcript he says his job was not only to oversee the construction but also to supervise the subcontracts his job was to get it done if he chose to do it himself so be it and we think if that part of the ruling stands it raises important questions that arise every time a salaried employee is convicted of a crime involving self-dealing and the district court doesn't get into the the he seems to find it sufficient that Butler's a salaried employee and that he was in some sense overseeing the operations and he was ultimately responsible for making sure that these jobs got done but that doesn't mean that he owes CH construction every waking hour of his day and that work he does after hours and he's an executive he supervises the projects and then he changes out of his executive clothes and I said earlier it's not just pounding nails and clean up work and incidental stuff that you have to do to as part of he provided evidence detailed notes of work he did including construction of walls there's a picture of the actual wall there's a picture of things that you say I suppose they come in somewhat undisputed he says that but the problem you have the other people did the work said as testimony we did of people who same thing that was done on these projects and we did it for considerable amount of money less so that's evidence that works against that value added that he said he did this preponderance of the evidence it is a preponderance standard but don't you lose in the sense that you had to chart it okay you said you gave his value added court had no they said no we did everything everything on this project even punch list thing which is very key even this thing and we did it a whole lot less than what you paid him isn't that probative proper evidence that counterbalances his and therefore the fact to find it was more it weighed more why is that wrong but to two responses to that I mean there is evidence on the other side of the balance that our first point is that the it's not a black box jury verdict where you look at the evidence that could have supported the conclusion it's what the district court actually the record it is in the record not I don't think so in the context of summary judgment that's a legal determination and you can affirm on any ground not support it regardless of what the district court relied on because that's that's a legal conclusion in a judge applying his discretion determining the loss and figuring out appropriate sentence and I think if the district court didn't rely on a particular piece of evidence the facts in the record is not the end of the analysis and we just the evidence on the other side of the scale in our reply briefing in the opening there people did say what they said and that we can't dispute that but if the court had made credibility findings then we'd have a much more difficult time but I mean the district court said accepting that he did this for the purposes of analysis relied on on two reasons one was this actress race thing that we got into and the other thing was the district court's contention that it was part of his duties to CH construction and I think in the district court makes a finding in the context of a sentence in this procedural posture you look at the district court's actual reasons and the evidence that that supports the idea that this was part of this contractual duties you submit is just not there but there's a was he's being paid was Butler being paid yes okay and did he do it while he was still in there employed yes the problem is the implicit implicit premise that mr. Butler owes his employer every waking moment of his time but but things that you do do on their behalf and you get paid for why is that not embraced in that well so what he got paid for is the question I don't think he got paid for he has a salary and he works for CH construction and he has responsibilities in connection with his responsibilities are an executive to oversee the projects to hire subcontractors and that sort of thing and if he goes above and beyond and is driving construction equipment and building walls after hours and the district court didn't say I don't believe you did this stuff he just said I think it's within the scope of your contract and they just in points the district court just didn't get into the details of the evidence the district court didn't there evidence that is not in his contract is there evidence that these things that he did not within his employment contract the employment contract it's at a 87 to 91 is non-specific there's there's a title there's a non-complete there's a non-compete clause and there's a clause that says that as long as Butler is not in competition with CH construction nothing herein shall preclude the employee from pursuing other business charitable or investment activities as long as the activities do not infringe material on the materially on the time the employee has to devote to the performance of the obligation set forth in the employment agreement and if he was that that doesn't nail it shut but with his actual employment contract is is vague it says nothing about manual labor it describes only executive functions the extent it describes any functions at all and there is this at least implicit recognition that he doesn't necessarily owe CH construction every hour of his day and we you know we have to concede the government did present evidence on the other side of this but the district court did not rely on it and we address them in the reply brief why that evidence is not sufficient to support the result some out of time if the court has any further questions I'm happy to answer them otherwise I'll reserve the balance of my time thank you thank you mr. person miss Nicholson you can you address that Thomas Nicholson he said counsel said that the district court has left us sort of cabin to just the basis that he ruled against that was solely because he felt these were in the scope of his employment that correct and may it please the court I'm Jamie Nicholson representing the United States no your honor that's not correct the the district court here and and this is exactly the reason that the government and its brief highlighted the fact that this is a clear error review because this was fact-finding by the district judge it was fact-finding that was completed after a seven-hour sentencing hearing the judge here heard testimony from five different witnesses read extensive briefing ahead of time received numerous pages of documents and a few days later had another I think two-hour hearing on the forfeiture issue and there was there was essentially nine hours worth of evidence in front of the district judge the district judge various times made factual findings throughout the record but the fact is that just because he doesn't specifically say what he did or did not rely on what's in the record is in the record and as judge right as your honor pointed out the evidence here was that the government's burden was to prove at sentencing the loss amount by a preponderance of the evidence there was two competing versions of the evidence that were presented one was the government's theory of the case which was that essentially any money that was not paid to these subcontractors was the loss amount in the case was equivalent the loss amount and that's what the district court ended up agreeing with and I think as the court pointed out earlier as well that test that was supported by the testimony of agent Holzer it was supported by the tax records and the bank records that were submitted in this case all of the contemporaneous records to this offense supported the government's position and supported the district courts finding here to the contrary the defendant took the stand and he testified about this work that he claims to have done and he presented the expert report of dr. Perrin although there was no testimony from dr. Perrin so the district court was left with two competing decisions did it believe the government's version of events or did it by the defendant's version of events and the district judge in his role as a fact finder made the decision that it was relying on the government's versions of events that it agreed with the government's version of in the Stevenson case talks explicitly about the importance of the clear air standard and why it matters and it's because this the district court was in the position to hear all of the evidence and to review all of the documents and was in the best position to really make the determination about what actually provided value to the victim company in this case and and I think that's why that's what's important to understand at the outset is there's no dispute about the guideline in this case everyone agrees that to be 1.1 was the everyone agrees that under that guideline the defendant should get credit for the fair market value of the services received and so what the district court had to do in this case was determine what is that fair market value and after hearing all this evidence and seeing all the records district judge made the decision that the fair market value was the amount equal to the amount that was paid to the subcontractors was the excuse me the correct loss amount in this case and again I think I see it before but just simply because the district court didn't highlight everything specifically doesn't mean that this record didn't rely on it the district court heard all of the evidence commented on the evidence the district court did specifically make several specific credit credibility findings it first of all did credit the testimony of agent Halser and specifically found who is the FBI agent that went through in detail these bank records and the tax records of the defendant's companies and the district court specifically credited the testimony of agent Halser and said that it convinces the court that the markup of subcontractor services was considerably higher than the prevailing market rate and that was the heart of the issue before the district court what is the fair market value of services rendered and that's how the district court answered that question it credited the government's testimony the district court is essentially did say I'm not going to make a decision about whether you did or didn't do the work the district court several times sort of indicated some skepticism saying I'm not so sure that you did it but assuming for the sake of analysis you did didn't provide legitimate services to the victim company and that finding was correct because this is a situation where the defendant was the director of construction he was already on these job sites and he was responsible for making sure that overseeing all of the approximately 30 to 40 subcontractors that worked on any one job and he was responsible for talking all of them giving them the punch lists and going back and making sure that everybody did what his company CH construction had contracted for them to do what he did here was decided to award contracts to his own company and then even if you believe the defendants evidence he decided to go around and do things like prepping the site for the stonework doing the cleanup work for the stonework and that is something that was already that he should have been enforcing other people to do so it's not a situation where he I think the phrase that was used was he's supposed to devote every waking moment and that's not the case at all certainly CH construction never took the position that he needed to be on site a hundred hours a week and and that he was supposed to do that but what the district court found is correct is that he was responsible for delegating these responsibilities for supervising and making sure they got done and what he did here was devised a scheme to profit at his employers expense and he decided rather than doing my job and going to these subcontractors and telling them you need to do the work that we've already paid you to do as part of the contract I'm gonna just do it myself and then I'm gonna decide how much to pay myself from my employer so he was essentially on these same job sites working for two separate companies at the same time working for both CH construction and Valley or act depending on the job and he was getting paid all by CH construction so he figured out and the district courts stated it very succinctly when he said that he figured out a way to double his salary by performing work that either was already part of his job in terms of supervising and making sure it was done or was already part of another subcontract and so the district courts finding here was was based on the facts based on the nature of this defendants job based on the nature of the work that he claims to have performed and found that based on all of those facts any work that the defendant claims he did provided no legitimate value to the victim company I will know and it's something that I neglected to note in my brief but even adopting the defendant's argument the one of the issues that the government had throughout these proceedings was that the defendant was never able to say what the value of any of his work was it wasn't until I think two days before sentencing that for the first time we got this expert report that tried to sort of quantify the actual value of the work he had performed and up until that point that was the frustration as the government said there's no the tax records don't account for his work the bank records don't account for his work there's no evidence that he did any of this work so there was no way to account for it and he finally did attempt to account for it in this report by Dr. Perrin even in that report Dr. Perrin categorizes various different he categorizes the self-performed labor the materials that the defendant claims he purchased the cost to the vendors things like that even in that report Dr. Perrin who is the defendants expert states that the value of the defendants self-performed labor was three hundred and thirty thousand dollars it did not make up the difference of the eight hundred and sixty four and so in terms of the guideline issue even if the court was to buy the defendant's argument and even if the court was to determine that the defendant should receive credit for that self-performed labor the evidence was that that wouldn't change the guidelines at all that would only do just really overthinking this whole thing it's very possible doesn't it it just strikes me that just because a person decides figures out a way to put more money in his pocket doesn't mean that the employer lost less well it does in this case it because of the facts of this case because the the way that CH construction works is it's a general contractor and it subcontracts out all of the work and so what happened here was that the defendant when the things he talks about extensively and even in his own testimony is that he tries to he did things like going around and cleaning up after the other subcontractors well the testimony from the subcontractors and even from mr. Broglin who is the defendant's witness was that yes all of us are responsible for doing our own cleanup and so the problem here is that part of the contract with each of the subcontractors is they will do this work and CH is already paying for that to happen and what the defendant did was he decided to go out and do this work on his own instead of enforcing the contract and so what happens is CH ends up paying the full value of the contract to the subcontractor and then they also end up paying the defendant his salary which should have been used for the amount that he felt was appropriate to pay himself for this the extra work that was done that should have been part of the subcontracts and that was that was the district courts finding was that essentially he tried to double his salary by doing these tasks that he either should have been enforcing someone else to do or that were part of his duties already as the director of construction and so that's the harm in this case is the extra money and again that was illustrated by the fact that at the current time the subcontract the same work is being done with the same subcontractor that the defendants company used and it's being done for approximately a third of the price of the defendants company was charging for it and again that the government use that to illustrate the point that that is the money that that the victim was out in this case was that extra what we essentially referred to as the over billing in this case was the markup of the services in this case and it's a significant difference right so it was him figuring out a way to put more money in his pocket yes exactly yeah but that's that's what I can't understand in terms of the markup a little confused to me because it seems to me that the district court could have said said that no I'm not concerned about all the things you said you did or whether you did it or not not because whatever you did was owed to your employer but even if you did those things the evidence is that you think they were paid you would cause the payment way above those amounts right so that's what see me to disconnect is but he discounted solely because I'm not gonna give you any credit because you're supposed to do that that's part of your job but in this fact in this case is no if you did it it's still way above because that was the evidence that we did the very same thing was done on all your project and we are way under him right that's that's the point exactly and I do think that the district court made that finding as well when it when it found it's in the memorandum order of forfeiture on 309 of the joint appendix and that's where the district court specifically credited the testimony of agent Holzer and said it convinces the court that the markup of subcontractor services was considerably higher than the prevailing market rate and so I think that the district court sort of tried to reach it a few different ways and it's admittedly not the most clear because I think because he was trying to reason it out several different ways and in one of the ways that he found was was that instance I just read that the markup was considerably higher and I believe earlier in the same opinion on 306 of the joint appendix he says the the I think it starts out the government maintains and the evidence appeared to confirm that Butler added a significant markup for the services performed by the subcontractor because we could have gotten all the work you did for less money exactly that's the law exactly whether you did it or not exactly and the first day that much more succinctly than I could I think your honor as I said it was it was a very long sentencing hearing was a seven-hour sentencing hearing there was clearly a lot of issues that were being brought up and the and the district court was trying to summarize as best it could all the evidence that it heard make the finding various different ways but certainly we agree with the court that that that finding is supported in the record that that is a finding that that the court in fact made and finally I just would would circle back to the point that the court made earlier that this was a sentencing issue the defendant pled guilty to mail fraud he admitted that he hid ownership of the company the district court drew an inference from that as well that he used that inference to acknowledge the fact that these were inappropriate markups because why would you create this company forge signatures on the contracts hide your ownership of it if in fact you're simply charging market rate for the service the question here was what was the fair market value of the services rendered the district court determined that number the number that the district court found was supported by the financial records by the testimony of the witnesses and we would ask that the court affirm on that ground on count two I'll simply add to that I'm sorry in the second issue I'll simply add to the defendants argument that we do agree blackman controls this key blackman controls the issue in this case and we would ask that the court affirm the money judgment for forfeiture as well thank you on the the test on one of the last things was Nicholson said about the government about the court crediting agent holsters testimony about the markup the markup is one of the columns on the spreadsheet if you look at I spreadsheet that starts at a 137 there's self-performed labor equipment vendor material fuel markup if the district court had said I find that you get no credit for that specific column then I think we'd have a much difficult much more time but the district court and to be clear out the point of making markup is specific markup is something Butler put into the put into his valuation where his value would value would hire someone else and impose a normal practice in the construction industry and falser said the markup was too high in the district court agreed with that we're not necessarily challenging that on appeal but that is that's not the whole case don't you agree though if the markup was too high it doesn't matter how much work he was doing at midnight or overtime they know their loss wasn't it at the end of the I think we're saying two different things by markup yeah yeah I understand a little bit about construction in terms of markup normally is your cost and your labor and then after you get to how much it cost with your labor then you say 15 percent on top of that that's mark up that that's that's terms you don't in terms of markup yes which is appropriate but but the point is once you find though that in those services the markup is too high meaning on these contracts we pay way more than the market rate was all right now that being the case no matter how much work he did to make sure things were done the point is they paid too much money because they could have gotten that done at a lower price even if he did all the work they could have gotten it done at a lower price because that's defining way above market rate I don't know why did this further you know whether or not you had to do it whether or not you're obligated to do it no moment the point is they pay too much money even if you did the working sawed and hammered all night long they still pay too much money I think two responses to that one what one is I think the district gave him just no credit at all for Butler's work if he said you charge too much for it that's one thing but he said you get no credit at all the other point I think is I think when they're talking about markup they're talking about this column on the spreadsheet they're not talking about the ultimate price that CH construction paid Valiant Act they're talking about the markup that Valiant Act purported to pass on to CH construction when they hired subcontractors or equipment and that sort of thing like equipment cost so I think that may be part of the story and if the district court had taken that out and not given him credit for it we'd have a much tougher time but that's that's not the whole story to go back to the point as Nicholson started with two competing versions of the facts the district court did not accept the government's version of the facts he said today 617 I don't think they were shell companies and he ultimately gave two legal reasons for rejecting Butler side of the case one was this part of the actus race and the district court says the determinative question is whether this distills to whether the admittedly fraudulent services rendered by the defendant while lawful in nature will it were legitimate or an integral part of the actus race that's a legal reason that's not accepting the government's version of the facts and that that's wrong the other reason was this part of the contract business he said you know assuming for the sake of it's it's it's the the net principle we talk about it you don't get credit for work you did that's part of your crime mr. Butler's not asking for a credit for time he spent putting the contracts together or forming these companies or doing fraudulent things what he's asking for is credit for the value he provided and this is the desire was to cover up his crime because he knew that if he done properly almost job why is that not a part of the modus operandi right so we don't write so mr. Butler has has pled guilty but I think that's that's a separate question I mean the best case that really encapsulates this is the Schneider separate questions a different question but it's not separate because it is a question whether or not that the loss is in within the rest just die of the crime the point here is is that isn't that I'm not sure I'm able to keep up with the Latin I just go to circle back to your initial point I understand where you're coming from the thing happening yes I just I understand your point that if he'd not if he just simply taken the contract and not done anything he probably would not have gone on like this for seven or eight years but I don't think it follows from that that he doesn't get any credit for this this labor under that analysis and that the distinction is is probably best encapsulated in the Schneider case from the Seventh Circuit that we say where there's a distinction between a pure fraudster who solicits a contract gets the payment and then walks away and does nothing in that case the entire price is lost and the other distinctions legitimate services provided in an illegitimate manner and he provided legitimate services and the district court accepted for the sake of analysis that he provided legitimate services he provided legitimate services while concealing the origin of those sources and where the money went for those services but they were nonetheless legitimate services he built walls he dug trenches he pounded nails did stone work and there's no there's no dispute I mean I don't think the government even disputed that this work was actually done into a high standard of quality they just disputed where this goes in the in the calculation and this is another another point I wanted to address is that even even addressing the government even adopting our argument Butler asked for $330,000 of manual labor costs and that's not the whole even even accepting that the guidelines still come out the same that wasn't his whole argument he also talked about equipment costs and all the items are in the spreadsheet I don't know the full details about the timing of when the spreadsheet was provided but the notes underlying the spreadsheet were provided to the government in February 2012 which is about a year before sentencing and that's the email and closing that is at 231 those things weren't reflected in the corporate accounting as cost they were I think there was some overlap at the right his valiant acts records were not meticulous they didn't reflect a salary that they I I don't think Valley and X tax records are good for us and I'm not gonna say that they are but to respond at least partially to miss Mickelson's point the spreadsheet was not provided to the government to leave sentencing but the notes underlying the spreadsheet which if you compare the notes and the spreadsheet it's verbatim the words are verbatim the same with a few edits and that this is the experts attempt to take that stuff and quantify and since it's the government's burden to prove the loss for sentencing mr. Butler provided the notes and thought you know I'm giving you this information the government would use it to meet its burden and the government's position was this this all amounts to zero and you court did not accept the government's competing version of the facts he expressed skepticism at various points in the transcript but he assumed Butler's facts for the sake of analysis and gave two legal reasons for rejecting it and to explain we think those reasons are wrong and that has no further questions thank you hey mr. Burgess I note that your court opponent I want to give you a special thanks we appreciate your work the court couldn't do his work without your your able assistance and we really appreciate that on behalf of the thank you for able to represent the United States here with that we're gonna ask the clerk to adjourn the court sine die then come down and greet counsel
judges: Roger L. Gregory, G. Steven Agee, Barbara Milano Keenan